UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHARAD I. BHATNAGAR,                )
                                    )
        Plaintiff,                  )
                                    )
            v.                      )   Civil Case No. 11-2281 (RJL)
                                    )
SUNRISE SENIOR LIVING, INC.,        )
                                    )
        Defendant.                  )

MEMORANDUM OPINION
March 20 2013 [# 9]

Plaintiff, Sharad I. Bhatnager ("plaintiff" or "Bhatnagar"), filed this lawsuit against his former employer, Sunrise Senior Living, Inc. ("defendant" or "Sunrise"), for unlawful termination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*  Compl. ¶ 12 [Dkt. # 1].  Defendant moved for summary judgment, alleging that plaintiff failed to identify a genuine issue of material fact that his termination was motivated by his age.  Def.'s Mot. for Summ. J. [Dkt. # 9] ("Def.'s Mot."); Def.'s Mem. in Supp. of Mot. for Summ. J. [Dkt. # 9-2] ("Def.'s Mem.") at 31.  Because plaintiff has failed to identify a genuine issue of material fact as to his age discrimination claim, the Court GRANTS defendant's Motion for Summary Judgment.

BACKGROUND

Defendant is the manager of Grand Oaks, a Washington, D.C. assisted living

1

facility owned by Sibley Hospital. Pl.'s Resp. to Def.'s Mot. for Summ. J. [Dkt. # 12] ("Pl.'s Opp'n") at 1. Plaintiff worked at Grand Oaks as the Dining Services Director from May 15, 2006 until his termination on December 16, 2010 at age 61. Dep. of Sharad Bhatnagar ("Bhatnagar Dep.") [Dkt. # 9-5], Ex. 3 to Def.'s Mot., at 59-60, 351. He reported to Executive Director Paul Kelley ("Kelley") until February 2009, when Beatriz Van Goethem ("Van Goethem") replaced Kelley as Executive Director and plaintiff's supervisor. Decl. of Jackie Sollars-Wade ("Sollars Decl.") [Dkt. # 9-6], Ex. 4 to Def.'s Mot., ¶ 2. One month later, Perri Holod ("Holod") became Sunrise's Regional Director of Operations. Decl. of Perri Holod ("Holod Decl.") [Dkt. # 9-3], Ex. 1 to Def.'s Mot., ¶ 3. Plaintiff claims that he had a poor working relationship with both Van Goethem and Holod. Bhatnagar Dep. at 97-98, 156-57.

1. **Plaintiff's Performance**

In March 2010, Bhatnagar had his annual performance review with Van Goethem. Bhatnagar Dep. at 183-84 & Ex. 5. He received an overall rating of "effective," or a three out of five. *Id.*, Ex. 5. Having received "very effective" ratings prior to this performance review, he was unhappy with this rating and submitted a rebuttal. *Id.* at 184. In the review, plaintiff was criticized for "[l]ack of issuing timely disciplinary actions" to team members. *Id.*, Ex. 5. Plaintiff admitted that he had refused to discipline or terminate several employees, as instructed by Van Goethem, because he had disagreed with her instruction. *Id.* at 185-89.

2

In April 2010, Holod conducted another site visit at Grand Oaks. Holod Decl. ¶ 10. She was "appalled by the conditions" in the kitchen. *Id.* In her report, she noted in bold that "[t]he kitchen needs immediate attention and is extremely dirty." *Id.*, Ex. B. Holod also noted that food cannot be stored on the floor and needed to be dated, labeled, and rotated. *Id.* She threw out hundreds of dollars of food that was not properly dated or labeled, as it presented a health risk to the residents. *Id.* ¶ 10. She also stated that the stove, oven, grill, burners, and warmer needed to be thoroughly cleaned to remove "the severe grease build up" and to avoid "a fire hazard." *Id.*, Ex. B. Because plaintiff was not present during the site visit, Holod enlisted the Director of Facilities to assist with kitchen sanitation, even though kitchen sanitation was not his responsibility. *Id.* ¶ 11.

On July 19, 2010, Bhatnagar received a Final Warning from Van Goethem for failing to follow Sunrise's disciplinary policy with employee Martha Reyes and for inadequate communication with the executive chef about extending another employee's vacation. Bhatnagar Dep. at 226-28 & Ex. 9. Plaintiff believed that the warning was issued because Van Goethem was upset that Martha Reyes had called the employee hotline to complain about plaintiff. *Id.* at 231-32. Plaintiff took off sick for the next three days and then asked Holod to meet with him. *Id.* at 217-18. Plaintiff described the meeting as one in which Holod was not interested in listening to him and asked him, "If you don't like it, why [don't] you leave[?]" *Id.* at 218. At the end of July 2010, Van Goethem resigned. Holod Decl. ¶ 13.

On August 11, 2010, Regional Director of Dining Services Helene Fletcher performed an audit of Grand Oaks' Dining Services department. Decl. of Helene Fletcher ("Fletcher Decl.") [Dkt. # 9-7], Ex. 5 to Def.'s Mot., ¶¶ 1, 7). She gave the department a score of 63.99 percent, a grade equivalent of "D." *Id.* ¶ 8 & Ex. A. Similar to Holod's prior assessment, Fletcher found that the "kitchen currently does not meet our standard for cleanliness and needs an improved process to ensure detailed cleaning is completed." *Id.*, Ex. A. Fletcher also found milk stored on the floor, prepared items mixed with raw products, and overstuffed food storage areas. *Id.* ¶ 8 & Ex. A. Around the same time as this audit, Carla Shipley became the new Grand Oaks Executive Director. Decl. of Carla Shipley ("Shipley Decl.") [Dkt. # 9-4], Ex. 2 to Def.'s Mot., ¶ 4.

On August 30, 2010, Regional Director of Human Resources Jackie Sollars met with plaintiff and asked him to resign. Bhatnagar Dep. at 277-79. Plaintiff asked for a few days to make a decision. *Id.* at 279. The next day, plaintiff sent a letter via e-mail to three Sibley Hospital executives, stating that he had been asked to resign and was "tired of Sunrise politics, penny pinching habits, more and more profits for Sunrise." *Id.*, Ex. 15.

Doubting the fairness of Fletcher's August 2010 audit, plaintiff requested a second audit. *Id.* at 291. On September 4, 2010, Sunrise's Vice President of Dining Services Doug Garner conducted a second audit, accompanied by Fletcher. Bhatnagar Dep. at

291-94; Decl. of Doug Garner ("Garner Decl.") [Dkt. # 9-8], Ex. 6 to Def.'s Mot., ¶ 3. Garner gave the department a rating of 58.2 percent, a grade equivalent of "F." Garner Decl. ¶ 4 & Ex. A. He found that the food inventory was "out of control" and the dining area was unclean. *Id.* ¶ 4. When Garner and Fletcher met with plaintiff to discuss their findings, plaintiff "didn't seem to care," *id.* ¶ 5, and "made a lot of excuses for why he couldn't get things done," Fletcher Decl. ¶ 10. Garner recommended terminating plaintiff immediately. Garner Decl. ¶ 6 & Ex. B.

The day after this audit, plaintiff injured himself and was unable to work for three months. Bhatnagar Dep. at 322-23, 351. During plaintiff's absence, Sunrise employees noticed other irregularities in plaintiff's department, including an unprocessed food order, a large excess supply of food and alcohol, an overpriced contract for laundering dining room linens, unlocked employee files, untimely performance evaluations, and unauthorized merit pay increases. Holod Decl. ¶ 18; Shipley Decl. ¶¶ 11-14. When plaintiff returned to work on December 16, 2010, Shipley and Sollars met with plaintiff and offered him the option to resign; when he did not accept that option, he was terminated. Holod Decl. ¶ 19; Shipley Decl. ¶¶ 16-17.

2. **Plaintiff's Age Discrimination Allegation**

Bhatnagar claims that he was terminated due to his age. Pl.'s Opp'n at 18. He asserts that "age was the only issue [he could] think of" because his work record was "clean and good." Bhatnagar Dep. at 372-73. Prior to Van Goethem's arrival, plaintiff

states that he received at least "Overall Effective" ratings on his performance evaluations, passed District of Columbia health inspections, and was told by management that his department "looked great." Pl.'s Opp'n at 2; Decl. of Sharad I. Bhatnagar ("Bhatnagar Decl.") [Dkt. # 11-1], Aff. to Pl.'s Opp'n, ¶¶ 20-21. Plaintiff also states that he received bonuses and salary raises each year "in recognition of his service to Sunrise" and "because [he] was doing a good job." Bhatnagar Decl. ¶¶ 14, 44. He said that Sibley Hospital's president and CEO walked through his kitchen multiple times per week and never had any complaints. *Id.* ¶ 32. He also notes that the Sunrise CEO inspected the Grand Oaks facility on June 7, 2010 and indicated to plaintiff that he was "very pleased." *Id.* ¶ 41.

After Van Goethem became executive director, plaintiff states that she asked plaintiff to retire or resign "all the time" and made comments about hiring "young" employees. Bhatnagar Dep. at 434-35. Plaintiff also alleges that Holod told him that he "should retire" because "[i]t looks like it is getting too much for you," and she allegedly asked him, "If you have so many problems going on, why don't you resign?" *Id.* at 210, 433-34. Sollars also allegedly told plaintiff that he "should join [his] wife and work with her and resign from [Sunrise]." *Id.* at 434. Unspecified Sunrise managers also told

6

plaintiff that he was "getting too old" and "things like that." *Id.* at 433.[1]

Plaintiff blames his "poorer performance review" on Van Goethem's desire to replace plaintiff with her relative, and he claims that her Final Warning to plaintiff was contrary to Sunrise's disciplinary policy. Bhatnagar Decl. ¶¶ 27, 37. Plaintiff also states that Van Goethem refused to let him hire older, more experienced chefs in favor of a younger applicant. *Id.* ¶ 29. Plaintiff also prepared a list of several Grand Oaks employees who allegedly were terminated during plaintiff's employment and were born before 1965. *Id.*

Plaintiff also recalls a conversation with "a Food and Beverage Director from [another] Sunrise facility," who allegedly told him that Sunrise management had plotted to terminate plaintiff "by use of an audit." *Id.* ¶ 38. This employee also told plaintiff that Holod had told Shipley that her "number one job" was to fire plaintiff and that Sollars planned to have Shipley "finish [the] job" by firing plaintiff. *Id.*

## STANDARD OF REVIEW

Summary judgment is appropriate when the movant demonstrates that no genuine issue of material fact is in dispute and that the moving party is entitled to judgment as a

---

[1] Suffice it to say, the details surrounding the "getting old" statement are unclear. *See* Def.'s Reply to Pl.'s Opp'n to Mot. for Summ. J. [Dkt. # 13] ("Def.'s Reply") at 13 n.7; Pl.'s Opp'n at 3; Bhatnagar Dep. at 433-34. In his opposition, plaintiff connects both Holod and Van Goethem with the "getting old" comment. *See* Pl.'s Opp'n at 18. But when plaintiff was asked in his deposition to specify what Holod said, he did not mention the "getting old" comment. *See* Bhatnagar Dep. at 433-34.

matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden, and the court will draw "all justifiable inferences" in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). Nevertheless, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation marks and citation omitted). "Thus, if the evidence presented by the opposing party is 'merely colorable' or 'not significantly probative,' summary judgment may be granted." *Burke v. Gould*, 286 F.3d 513, 520 (D.C. Cir. 2002) (quoting *Anderson*, 477 U.S. at 249-50); *see also Montgomery v. Chao*, 546 F.3d 703, 708 (D.C. Cir. 2008) ("The possibility that a jury might speculate in the plaintiff's favor . . . is simply insufficient to defeat summary judgment."). Factual assertions in the moving party's affidavits may be accepted as true unless the opposing party submits its own affidavits, declarations, or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992). Supporting or opposing affidavits must be made on the basis of personal knowledge and must set out facts that would be admissible in evidence. Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

Plaintiff alleges a violation of the ADEA, which prohibits employers from "discharge[ing] any individual or otherwise discriminat[ing] against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish a

disparate-treatment claim under the plain language of the ADEA, . . . plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S 167, 176 (2009). Unfortunately, for plaintiff, he has failed to present sufficient evidence to overcome defendant's motion for summary judgment. Much of plaintiff's evidence is inadmissible or self-serving testimony—which, even when taken to be true, does not support a claim of age discrimination.

### 1. Direct Evidence of Discrimination

To prove age discrimination under the ADEA, plaintiff may present direct evidence of age discrimination. *See Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006). Direct evidence of discrimination is "evidence that, if believed by the fact finder, proves the particular fact in question *without any need of an inference* [and] includes any statement or written document showing a discriminatory motive *on its face*." *Davis v. Ashcroft*, 355 F. Supp. 2d 330, 340 n.2 (D.D.C. 2005) (emphasis in original) (citations and internal quotation marks omitted). Direct evidence may also include "a statement that itself shows racial or gender bias in the decision" to terminate plaintiff. *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011).

As "direct evidence" of discrimination, plaintiff cites two pieces of evidence. First, he relies upon the alleged comments from Sunrise managers that he was getting "old" and should "retire" or "resign." Pl.'s Opp'n at 18 (citing Pl.'s Opp'n at 3-4). Certainly, asking an employee to resign does not, by itself, constitute direct evidence of

age discrimination.  *See Faherty v. Lockhart*, 751 F. Supp. 994, 1006 (D.D.C. 1990) (employer asking for resignations of employees over 40 was not sufficient to prove age discrimination).  Even when the employer replaces the word "resign" with "retire," such a comment does not clearly demonstrate discrimination based upon age.  *See Perry v. Shinseki*, 783 F. Supp. 2d. 125, 138 (D.D.C. 2011) (citing *Shipman v. Vilsack*, 692 F. Supp. 2d 113, 118 & n.5 (D.D.C. 2010) for proposition that supervisor's inquiries about retirement are not sufficient evidence of discriminatory intent).  As for the "getting old" comment, plaintiff does not clearly identify who made that comment.  Without evidence that the speaker participated in the decision to terminate plaintiff, plaintiff cannot rely upon that comment as evidence of discrimination, either direct or circumstantial.  *See Carter v. George Washington Univ.*, 387 F.3d 872, 880 (D.C. Cir. 2004).[2]

Second, plaintiff cites his own testimony that Van Goethem insisted that Sunrise hire a "young" executive chef.  Pl.'s Opp'n at 4, 9, 18 (citing Bhatnagar Dep. at 435).  This evidence is clearly not "direct" evidence of age discrimination, since it has nothing to do with plaintiff.  *See Simpson v. Leavitt*, 437 F. Supp. 2d 95, 105 (D.D.C. 2006) (employer's comment that we "need to bring in younger people" is not direct evidence of

---

[2] *Cf. Stone v. Landis Const. Corp.*, 442 Fed. Appx. 568, 569 (D.C. Cir. 2011) (employer's comment that applicant was "old" when rejecting his application constituted direct evidence of age discrimination).  Notably, *Carter* prevents plaintiff from relying upon Van Goethem's actions or statements as evidence of age discrimination against him, since she resigned five months prior to plaintiff's termination.  And tellingly, plaintiff admits that Shipley, who replaced Van Goethem and demanded plaintiff's resignation, did not discriminate against him on the basis of age.  Bhatnagar Dep. at 353, 356.

age discrimination because it is not specific to plaintiff). At best, it is circumstantial evidence that cannot overcome summary judgment. *Id.* at 105-06.

## 2. Circumstantial Evidence of Discrimination

If plaintiff cannot provide direct evidence, he instead can establish discrimination with circumstantial evidence through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Chappell-Johnson*, 440 F.3d at 488. Under the traditional framework, discrimination claims proceed in three steps: "(1) the plaintiff must prove a prima facie case of discrimination; (2) if the plaintiff does so, then the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the action in question; and (3) if the defendant meets that burden, the plaintiff must show that the defendant's proffered reasons were not its true reasons, but were a pretext for discrimination." *Ponce v. Billington*, 679 F.3d 840, 844 (D.C. Cir. 2012) (citations and internal quotation marks omitted).[3] However, when plaintiff has suffered an adverse employment action and defendant has asserted a non-discriminatory reason for the action, a court need not decide whether plaintiff proved a prima facie case of discrimination. *Brady*, 520 F.3d at 494. Instead, when considering a motion for summary judgment, a

---

[3] In a case involving termination, a prima facie case typically requires evidence of the following: "(i) the employee belongs to a protected class; (ii) the employee was still qualified for the position; (iii) despite still being qualified, the employee was fired, demoted, or otherwise adversely acted upon; and (iv) if the employee was removed, either someone else filled the position or the employer sought other applicants." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 n.1 (D.C. Cir. 2008).

court simply must determine whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee." *Id.*

Here, defendant has alleged a clear, non-discriminatory reason for terminating plaintiff: "the two failed audits of his dining department, his imprudent letter to senior executives at Sibley Hospital, and other instances of poor judgment." Def.'s Reply at 16. Plaintiff, however, has utterly failed to present sufficient evidence that this reason was pretextual for intentional discrimination. How so?

Plaintiff fails to adequately rebut the sizeable evidence of his poor job performance. In response to the site visit and audits that found serious problems in the kitchen, plaintiff responds with anecdotal evidence that others told him that the kitchen "look[ed] great" or praised him for his work. Pl.'s Opp'n at 12. Even if this hearsay were admissible, these casual comments do not rebut the weighty and detailed concerns in the site visit and audits. Plaintiff notes that his kitchen consistently passed District of Columbia health inspections, Pl.'s Decl. at 4, but does not show that these health inspections addressed the same issues as Sunrise's visit and audits.[4] He also complains that management did not give him "time . . . to get ready" for the audits—hardly an

---

[4] Indeed, evidence suggests that the city health code inspection standards are less stringent than Sunrise's standards. *See* Supplemental Decl. of Helene Fletcher ("Fletcher Supp'l Decl.") [Dkt. 13-3], Ex. C to Def.'s Reply, ¶ 4.

excuse for poor kitchen maintenance. Pl.'s Opp'n at 12. He claims that Fletcher "lied" in her audit report and that, when she handed him the audit results, she apologized to him because "she knew they were not right." Bhatnagar Decl. ¶¶ 42, 44 ; *see also* Bhatnagar Dep. at 245.[5] But he provides nothing more than his own affidavit to support these speculations. *Cf. Waterhouse v. Dist. of Columbia*, 124 F. Supp. 2d 1, 7-8 (D.D.C. 2000) (plaintiff's own opinion as to his job performance is not relevant), *abrogated on other grounds by Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 850 (D.C. Cir. 2006). Further, plaintiff fails to provide any explanation whatsoever for his inflammatory letter to the Sibley Hospital executives, one of defendant's cited reasons for his termination. Def.'s Reply at 16. He also admits that he refused Van Goethem's directives to discipline employees, the key behavior underlying his weak March 2010 performance review. *See* Bhatnagar Dep. at 184-89 & Ex. 5.

Moreover, certain key elements of plaintiff's evidence are inadmissible or incomplete. For example, plaintiff provides a list of 61 individuals that defendant allegedly terminated when they were over 50 years old. *See* Bhatnagar Decl. ¶ 29. Several names on this list lack last names. *See, e.g., id.* ("Santos S, Sarpong G," and "Yamba P"). Despite admitting that he does not know all of the people on this list, plaintiff insists that they "were not fired for any legitimate performance or disciplinary

---

5 In fact, what plaintiff recalled Fletcher saying to him was, "'I'm sorry.' That's all. I have to do this.'" Bhatnagar Dep. at 245.

reason." *Id.* ¶ 30. When describing the basis for this knowledge, he cites conversations with "some" of the terminated employees; he also claims that he spoke to Sunrise managers about the terminations but was "told that it was none of [his] business." *Id.* Even if this hearsay evidence were admissible, it does not demonstrate that plaintiff had personal knowledge of the reasons for the other employees' terminations. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Similarly, plaintiff states that he received bonuses and salary raises "in recognition of [his] service to Sunrise" and "because [he] was doing a good job," Bhatnagar Decl. ¶¶ 14, 44, but he fails to state how he has personal knowledge that these pay increases were connected to job performance.

In sum, much of plaintiff's evidence is either hearsay or double hearsay. Plaintiff additionally cites several rumors he heard through another Sunrise employee—that Sunrise managers planned to use audits to fire him, that Van Goethem's "number one job" was to fire him, and that Shipley would "finish [the] job" by firing him. *Id.* ¶ 38. While plaintiff appears sheepishly to acknowledge the evidentiary concerns surrounding these rumors when he suggests that the rumors "may be considered as a statement made to Plaintiff even if not accepted for the truth of the statement," Pl.'s Opp'n at 20 n.1, the bottom line remains the same: these rumors cannot serve as evidence that plaintiff was

terminated due to his age. Similarly, plaintiff's assertion that his performance reviews had been "always . . . very effective" prior to his March 2010 review, Bhatnagar Dep. at 184, is hearsay, absent the actual performance reports that he fails to produce. Curiously, plaintiff revises that description of his performance reviews in his opposition brief, saying that the reviews were "at least . . . 'Overall Effective'" prior to 2010. Pl.'s Opp'n at 2. Amazingly, plaintiff changes his tune yet again in his declaration, claiming that his reviews were "excellent" prior to 2010. Bhatnagar Decl. ¶ 27. This self-serving recollection of second-hand information is exactly the type of behavior that the hearsay rules were designed to protect opposing parties from.

In sum, plaintiff has failed to produce sufficient evidence for a reasonable jury to find that defendant's reasons for his termination were pretextual and that defendant intentionally discriminated against him due to his age.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment. An Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge